UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAKAYLA NAOMI HODGE, et al.,

                                Plaintiffs,

                -against-                                        25-CV-2736 (JGLC)

CITY OF MOUNT VERNON, et al.,                          **OPINION AND ORDER**

                                Defendants.

JESSICA G. L. CLARKE, United States District Judge:

On a late summer evening in 2022, Plaintiffs Makayla Naomi Hodge, Samuel Paul Collins-Snead III, and Donnell Gregory Cummings, three Black residents of Dutchess County, got pulled over by the police. For no reason, they allege, Mount Vernon police officers ordered them out of their vehicle, searched them and their vehicle without consent, and arrested them. They were charged with criminal possession of a weapon in the second degree. For four months, they were prosecuted. And then, all of the charges against them were dropped.

Plaintiffs now bring claims for false arrest, unlawful search and seizure, malicious prosecution, and failure to intervene against the police officers who arrested and interrogated them, as well as a municipal liability claim against the City of Mount Vernon. Discriminatory policing, they contend, is endemic to the Mount Vernon Police Department. Defendants, meanwhile, move to dismiss all of Plaintiffs claims pursuant to Rule 12(b)(6) for failure to state a claim.

For the reasons stated below, the Court finds that Plaintiffs fail to state a claim for unlawful search and seizure, malicious prosecution, and failure to intervene against the individual Defendants. Their false arrest claim, as well as parts of their claim for *Monell* liability

against the City of Mount Vernon, however, survive. Therefore, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Amended Complaint ("AC") and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

On or about August 22, 2022, at around 5:00 p.m., Makayla Naomi Hodge, Samuel Paul Collins-Snead III, and Donnell Gregory Cummings ("Plaintiffs"), three young, Black Dutchess County residents, were driving along a public highway when they were pulled over by the police.[1] ECF No. 13 ("AC") ¶¶ 21–23. They were not speeding or driving erratically. *Id.* ¶ 22. They were all wearing seatbelts. *Id.* Nevertheless, officers from the Mount Vernon Police Department ("MVPD"), including Christopher Cartwright ("Cartwright"), Marquis Randolph ("Randolph"), and unnamed John Does ("Does") (collectively, the "MVPD Officers" or "Officers"), approached the vehicle. *Id.* ¶¶ 26–28 (inferring that multiple officers approached the vehicle because the AC explains that multiple officers asked Plaintiffs for identification).

Collins, the driver, asked the Officers why he had been pulled over. *Id.* ¶ 24. The Officers did not give him a reason. *Id.* ¶ 25. Instead, the Officers demanded his license, registration, and insurance. *Id.* They also demanded that the passengers provide their identification. *Id.* ¶ 26. Collins again asked why he had been pulled over. *Id.* ¶ 27. The Officers demanded that all three Plaintiffs exit the vehicle. *Id.*

---

[1] According to the AC, Hodge "is" 22 years old, Collins "is" 26 years old, and Cummings "is" 22 years old. AC ¶¶ 18–20. It is unclear whether these ages reflect the time of filing or of the events in question.

Plaintiffs protested and asked why they were being told to exit the vehicle. *Id.* ¶ 29. At that point, the Officers ended the conversation—they forced Plaintiffs from the vehicle and detained them. *Id.* ¶¶ 28, 29. The Officers then searched Plaintiffs' persons and the vehicle, and, once they had completed their searches, arrested Plaintiffs. *Id.* ¶¶ 29, 32. All the while, Plaintiffs posed no threat to the Officers' safety. *Id.* ¶ 29.

Plaintiffs were then taken to the police station, where they were processed, put into a holding cell, and detained until they posted bail. *Id.* ¶ 39. They were arraigned the following day and charged with criminal possession of a weapon in the second degree, in violation of New York Penal Law § 265.03. *Id.* ¶ 40. The police impounded their vehicle and confiscated their cellular devices. *Id.* The vehicle would not be released for another six months. *Id.*

Next, the Officers signed an accusatory statement to prosecute Plaintiffs. *Id.* ¶ 41. They did this, Plaintiffs allege, with "no evidence to substantiate the charges." *Id.* ¶ 42. In fact, the MVPD "had irrefutable evidence of Plaintiffs' innocence." *Id.* ¶ 43. Still, the prosecution continued—"solely," Plaintiffs say, "to cover[]up Defendants' unlawful and unconstitutional conduct." *Id.* ¶ 44; *see id.* ("Plaintiffs' prosecution continued after there was no longer probable cause to believe that Plaintiffs had any involvement in any of the alleged and charged crimes.").

To defend themselves, Plaintiffs had to hire and pay a criminal defense attorney. *Id.* ¶ 45. They had to appear in court multiple times. *Id.* ¶ 46. They were subjected to the shame and humiliation that followed from their case being released to the public. *Id.* ¶ 45. And yet, on December 19, 2022, nearly four months after Plaintiffs were arrested, all of the charges against them were dismissed. *Id.* ¶ 47.

Plaintiffs now bring a case for false arrest, unlawful search and seizure, malicious prosecution, and failure to intervene against the MVPD Officers under the Fourth and Fourteenth

Amendments and 42 U.S.C. § 1983. AC ¶¶ 68–103. They also allege that the City of Mount

Vernon is liable for these constitutional violations under *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658 (1978) because, they contend, MVPD has engaged in a pattern and practice of

discriminatory policing. *Id.* ¶¶ 104–31. Plaintiffs originally brought their lawsuit in the Supreme

Court of the State of New York, County of Westchester. ECF No. 1-1. Defendants timely

removed to this District and moved to dismiss for failure to state a claim. ECF Nos. 1, 7.

Plaintiffs then filed an Amended Complaint, ECF No. 13, and Defendants again moved to

dismiss for failure to state a claim, ECF No. 14. The Court considers Defendants' motion to

dismiss below.

**LEGAL STANDARDS**

The Court sets forth below the applicable legal standards under Federal Rule of Civil

Procedure 12(b)(6) (failure to state a claim) and civil rights claims under 42 U.S.C. § 1983.

### I. Failure to State a Claim

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the

complaint liberally, accepting all factual allegations in the complaint as true, and drawing all

reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)

(internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff

alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550

U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

4

common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

## II.    Civil Rights Claims Under 42 U.S.C. § 1983

Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). To establish individual liability under Section 1983, a plaintiff must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

### DISCUSSION

The discussion below proceeds as follows. First, the Court examines Plaintiffs' false arrest claim. It finds that because Defendants have not, at this stage, sufficiently established probable cause, Plaintiffs' false arrest claim survives. Next, the Court considers Plaintiffs' unlawful search and seizure claim, and finds that Plaintiffs have abandoned it. Third, the Court analyzes Plaintiffs' claim for malicious prosecution. It concludes that because Plaintiffs' allegations are conclusory, they have failed to state a claim for malicious prosecution. Fourth, the Court assesses Plaintiffs' failure to intervene claim and finds that, again, Plaintiffs' conclusory allegations mean that this claim must also fail. Fifth, the Court determines that Plaintiffs sufficiently allege *Monell* liability, in part. Finally, the Court grants Plaintiffs leave to amend all

but their unlawful search claims. Accordingly, Defendants' motion to dismiss is granted in part and denied in part.

## I.    Plaintiffs State a Claim for False Arrest

Plaintiffs first allege that Defendants Cartwright, Randolph, and Does falsely arrested and imprisoned them. The Fourth Amendment protects the right of individuals to be free from unreasonable seizures, including arrest and detention without probable cause. *See Bailey v. United States*, 568 U.S. 186, 192 (2013). A Section 1983 claim for false arrest, resting on that right, "is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). To state a Section 1983 false arrest claim, a plaintiff must allege "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam) (internal quotation marks omitted). "Thus, a plaintiff may not bring a false arrest claim if there was probable cause to arrest him for an offense." *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 647 (S.D.N.Y. 2021) (citing *Betts v. Shearman*, 751 F.3d 78, 81 (2d Cir. 2014)).

Plaintiffs' Amended Complaint plainly establishes the first three elements of a false arrest claim. Defendants do not dispute that the MVPD Officers intended to arrest Plaintiffs, that Plaintiffs were conscious of their confinement, or that Plaintiffs did not consent to their confinement. Defendants argue, however, that Plaintiffs fail to state a claim for false arrest because they engage in "impermissible group pleading" and because the MVPD Officers had probable cause to arrest them. ECF No. 16 ("MTD") at 7–8, 9–11. Neither argument is persuasive.

### A. Group Pleading

Defendants first argue that Plaintiffs "merely lump all the defendants together and fail to distinguish their conduct, thereby failing to give adequate notice to the defendants as to what they did wrong." MTD at 7 (quoting *Goodman v. City of New York*, No. 23-CV-9648 (JGLC) (GWG), 2024 WL 3532921, at *11 (S.D.N.Y. July 25, 2024), *report and recommendation adopted*, No. 23-CV-9648 (JGLC) (GWG), 2024 WL 3983340 (S.D.N.Y. Aug. 29, 2024)) (cleaned up). This argument is unconvincing.

Here, the Amended Complaint clearly specifies that Defendants Cartwright and Randolph, as well as the unknown Doe officers, were the individual defendants whom Plaintiffs allege perpetrated the false arrest. In both the charge itself, *see* AC at 11, as well as in their description of the events at issue, *see* AC at 5–6, Plaintiffs specifically denote Cartwright and Randolph, alongside the individual Doe officers, as the "MVPD OFFICERS" who arrested and detained them. *Id.* ¶ 13. This is a far cry from simply alleging that generalized "'defendants' unlawfully confined" them. *Goodman*, 2024 WL 3532921, at *11.

Although Plaintiffs do levy similarly broad allegations at other points in the Amended Complaint, *see, e.g.*, AC ¶ 34 ("Defendants had neither valid evidence for the arrest of Plaintiffs nor legal cause or excuse to seize and detain them."), ¶ 37 ("Defendants, without any investigation and/or basis, unlawfully arrested and interrogated Plaintiffs."), they also include sufficient specific allegations to ensure that every individual Defendant can easily understand "what they did wrong," *Goodman*, 2024 WL 3532921, at *11. For example, Plaintiffs allege that the "MVPD OFFICERS forced Plaintiffs to exit the vehicle, detained them, and then proceeded to search their persons and the vehicle without consent, all while Plaintiffs posed no threat to the

7

officers' safety." AC ¶ 29. They continue that, after the Officers had finished searching Plaintiffs' persons and vehicle, the "MVPD OFFICERS arrested Plaintiffs." *Id.* ¶ 31. Again, Plaintiffs make clear that "Defendants CARTWRIGHT, RANDOLPH, and DOES are . . . collectively referred to as "MVPD OFFICERS'" throughout their Amended Complaint. *Id.* ¶ 13.

Accordingly, Defendants' group pleading argument does not sway the Court.

### B. Probable Cause

Defendants next argue that, even if Plaintiffs were sufficiently specific, their false arrest claim still fails because the MVPD Officers had probable cause to arrest Plaintiffs. MTD at 9–11. "Probable cause to arrest exists when the officers have reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Ackerson*, 702 F.3d at 19 (cleaned up). "In deciding whether probable cause existed for an arrest, [courts] assess whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Id.* (internal citation and quotation marks omitted). "[A] finding of probable cause turns on the particularities of each case and the unique circumstances confronting an officer at the time the seizure occurred." *Kaplan v. Cnty. of Orange*, 528 F. Supp. 3d 141, 164 (S.D.N.Y. 2021). And while probable cause "may be determined 'as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers,'" it is "generally a fact-intensive question" improper for resolution on a motion to dismiss. *Lopez v. City of New York*, No. 24-CV-6281 (ARR), 2025 WL 2959059, at *5 (E.D.N.Y. Oct. 17, 2025) (quoting *Barkai v. Mendez*, 629 F. Supp. 3d 166, 191 (S.D.N.Y. 2022)).

Defendants rely on the so-called "Automobile Presumption" to argue that the Officers had probable cause. The Automobile Presumption, Defendants explain, "provides generally that

8

when a firearm is recovered in a vehicle with multiple occupants absent circumstances that would tie ownership of the firearm to any one occupant, all of the occupants are presumed to own the firearm, and are therefore subject to arrest." MTD at 9. This "rule creates a rebuttable presumption that all occupants of a vehicle possess a weapon that is found in that vehicle but not found on the 'person' of any given occupant." *Id.* at 10 (quoting *Lewis v. Westchester Cnty.*, No. 20-CV-9017 (VB), 2022 WL 1448676, at *3 (S.D.N.Y. May 9, 2022)) (cleaned up); *accord* N.Y. Penal Law § 265.15(3). Accordingly, Defendants argue, because "each Plaintiff was charged with criminal possession of a weapon," and because "Plaintiffs do not plead any specific facts that would rebut the [P]resumption, . . . probable cause existed to arrest each Plaintiff for criminal possession of a weapon in the second degree[.]" MTD at 11. In other words, Defendants contend, once the Officers discovered a weapon in Plaintiffs' vehicle and that weapon "remained unclaimed, there was probable cause to arrest all vehicle occupants." *Id.* (quoting *Matthews v. City of New York,* 889 F. Supp. 2d 418, 434 (E.D.N.Y. 2012)).

But that is not quite right. First, the Presumption requires that a weapon be discovered in the first place. The Amended Complaint makes no mention of such a fact. The AC only reflects that Plaintiffs were *charged* with criminal possession of a weapon—not that they ever actually possessed one. AC ¶ 40. Plaintiffs properly stress this point in their Opposition, emphasizing that the AC "does not contain any assertions that a weapon was indeed found, where said weapon was found, or the circumstances surrounding a weapon being found." ECF No. 20 ("Opp.") at 2–3. At the motion to dismiss stage, where the Court must make all inferences in Plaintiffs' favor, this omission is itself fatal to Defendants' argument.

Second, and relatedly, the Automobile Presumption is subject to three significant exceptions: it "does not apply if (1) the firearm is found on an occupant's person; (2) the vehicle

9

is lawfully operated as a taxi, in which instance the duly licensed driver is not subject to the presumption; or (3) an occupant has in his possession a valid license to have and carry a firearm." *Matthews*, 889 F. Supp. 2d at 434 (citing N.Y. Penal Law § 265.15(3)). Defendants mention these exceptions in passing, but point to no facts alleged in the Amended Complaint— facts the Court must credit at this stage of the pleadings—to eliminate these potentially exculpatory circumstances.

Third, while Defendants rely on one case to describe the Automobile Presumption as a "rebuttable presumption," MTD at 10 (quoting *Lewis*, 2022 WL 1448676, at *3), they also concede that it is a permissive presumption, *see id.* "Under New York Penal Law § 265.15(3), the existence of a firearm in an automobile creates a permissive—not mandatory—presumption that all occupants of the vehicle have common constructive possession of the firearm, absent specific exceptions (the 'Automobile Presumption')." *Matthews*, 889 F. Supp. 2d at 434 (citing *County Ct. of Ulster Cnty. v. Allen*, 442 U.S. 140, 162–63 (1979) (holding the statute constitutional as applied as a permissive presumption)); *see also Shabazz v. Kailer*, 201 F. Supp. 3d 386, 393 (S.D.N.Y. 2016) ("The automobile presumption is purely permissive . . . ."); *Glenn v. Bartlett*, 98 F.3d 721, 726 (2d Cir. 1996) (describing the Automobile Presumption as "a permissive presumption—one that permits but does not require the jury to find the presumed fact").

Defendants elide this essential characteristic in their attempt to dismiss Plaintiffs' claim. As a permissive presumption, the Automobile Presumption does not require Plaintiffs to "plead . . . specific facts that would rebut" it. MTD at 11. Instead, Defendants must demonstrate probable cause based on the facts alleged in the Amended Complaint. Relying on a presumption alone is not enough. Indeed, the "notion that 'the application of the automobile presumption provides probable cause as a matter of law' despite the existence of potentially exculpatory facts

'that may amount to a rebuttal is, in essence, a dangerous attempt to transform a permissive presumption into a mandatory one.'" *Gibson v. Grant*, No. 20-CV-4421 (DG) (TAM), 2024 WL 1077892, at *12 n.15 (E.D.N.Y. Jan. 31, 2024), *report and recommendation adopted*, No. 20-CV-04421 (DG) (TAM), 2024 WL 1072566 (E.D.N.Y. Mar. 11, 2024) (quoting *Shabazz*, 201 F. Supp. 3d at 394).

Defendants' final argument that the Amended Complaint "specifically alleges that PO Cartwright and PO Randolph were *not involved* in the arrest or search" because Plaintiffs also bring a failure to intervene claim against them is likewise unavailing. ECF No. 21 ("Reply") at 4. False arrest and failure to intervene claims are not necessarily mutually exclusive: Cartwright and Randolph could have been involved in either the arrest or the search and still, as the AC sets out, have "had the authority, ability, and concurrent duty . . . to prevent" the other. AC ¶ 35.

As pled, then, Plaintiffs have plausibly alleged a false arrest claim. Defendants' reliance on a permissive presumption alone, grounded in a charge of criminally possessing a weapon, is insufficient at this stage to establish probable cause. Plaintiffs' false arrest claim survives.

## II.    Plaintiffs Have Abandoned Their Unlawful Search Claim

The Fourth Amendment also prohibits unreasonable searches. *See Carpenter v. United States*, 585 U.S. 296, 303 (2018). Plaintiffs claim that Defendants Cartwright and Randolph, as well as the Doe officers, violated this constitutional protection when they searched the Plaintiffs' persons and their vehicle "without consent, all while Plaintiffs posed no threat to the officers' safety." AC at 5–6, 11–12. Defendants counter that Plaintiffs' assertions are vague—arguing that Plaintiffs fail to "detail what type of search they underwent (i.e., frisk, pat down search) or the manner in which they were conducted"—and that Plaintiffs lack standing because they "do not claim that any of them owned the vehicle." MTD at 8, 9. Most significantly, Defendants argue in

11

their Reply that Plaintiffs abandoned their unlawful search claim by not adequately responding to Defendants' arguments in their Opposition. Reply at 5.

The Court agrees that Plaintiffs have abandoned their unlawful search claim. "A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" *Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212, 227 (S.D.N.Y. 2022) (quoting *Williams v. Mirabal*, No. 11-CV-336 (JMF), 2013 WL 174187, at *2 (S.D.N.Y. Jan. 16, 2013)). Here, Plaintiffs commit only one conclusory sentence to rebuff Defendants' ample arguments that their unlawful search claim should be dismissed. Opp. at 5 ("Additionally, at this stage Plaintiffs have adequately plead that their persons were unlawfully searched by Defendants."). This conclusory statement stands in sharp contrast to Plaintiffs' robust responses supporting every other one of their claims.[2] *See generally* Opp. Plaintiffs do not even include their unlawful search claim in their Opposition point header—instead focusing exclusively on their false arrest claim. Opp. at 3. Plaintiffs' response is insufficient. The Court therefore treats Plaintiffs' unlawful search claim as abandoned and dismisses it with prejudice. *See Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue . . . which provides an independent basis for dismissal."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997); *see infra* VI (explaining dismissal with prejudice).

---

[2] Defendants argue that Plaintiffs have abandoned all of their claims by failing to adequately respond to Defendants' motion to dismiss, but the Court finds that Plaintiffs have only failed to respond to one claim in a way that warrants abandonment: the unlawful search claim. *See* Reply at 2.

### III.   Plaintiffs Do Not State a Claim for Malicious Prosecution

Next, Plaintiffs allege malicious prosecution. *See* AC ¶¶ 42–45. They contend that Defendants charged them with criminal possession of a weapon in the second degree, in violation of New York Penal Law § 265.03, even though "Defendants had no evidence to substantiate the charges." *Id.* ¶ 42. "Defendants all along had irrefutable evidence of Plaintiffs' innocence," Plaintiffs claim, and knew that Plaintiffs' "arrests and prosecution were unlawful and in violation of Plaintiffs' rights." *Id.* ¶ 43. Nevertheless, Defendants continued to prosecute Plaintiffs "with malice" "after probable cause was vitiated." *Id.* ¶¶ 42, 43. "The prosecution was continued solely to cover[]up Defendants' unlawful and unconstitutional conduct," Plaintiffs allege. *Id.* ¶ 44.

Plaintiffs allege no facts to support these conclusory claims. Indeed, the above generic sentences represent the extent of Plaintiffs' claims on this issue. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678. That is all Plaintiffs have provided here. Accordingly, Plaintiffs have failed to state a claim for malicious prosecution.

### IV.   Plaintiffs Do Not State a Claim for Failure to Intervene

Plaintiffs also accuse Defendants of failing to intervene to prevent the false arrest, unlawful search and seizure, and malicious prosecution that they otherwise allege. AC ¶¶ 35, 90–103. Defendants ask the Court to dismiss this claim because Plaintiffs' underlying allegations are themselves vague and conclusory, and because Plaintiffs do not plead their failure to intervene claim with enough specificity itself. MTD at 14–15.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Buari v. City of New York*, 530 F. Supp. 3d 356, 391–92 (S.D.N.Y. 2021) (quoting *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014)). Under Section

1983, a police officer can be liable for failure to intervene if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Chepilko v. Henry*, 722 F. Supp. 3d 329, 347 (S.D.N.Y. 2024) (quoting *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd*, 461 F. App'x 18 (2d Cir. 2012)).

However, "a failure to intervene claim is contingent only on the underlying claim," *Arbuckle v. City of New York*, 14-CV-10248 (ER), 2016 WL 5793741, at *14 (S.D.N.Y. Sept. 30, 2016) (citing *Matthews*, 889 F. Supp. 2d at 443–44), meaning "there can be no failure to intervene claim without a primary constitutional violation," *Buari*, 530 F. Supp. 3d at 392 (quoting *Sanabria v. Tezlof*, No. 11-CV-6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016)). "For liability to attach for failure to intervene, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 799 (S.D.N.Y. 2021) (quoting *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994)) (cleaned up).

Here, Plaintiffs' false arrest claim is sufficient to serve as the underlying constitutional violation required to support a failure to intervene claim. *See supra* I. And, construing Plaintiffs' false arrest allegations in their favor, a reasonable person in any of Defendants' positions would have "know[n] that the victim's constitutional rights were being violated" during those arrests. *Chepilko*, 722 F. Supp. 3d at 347. Nevertheless, Plaintiffs do not sufficiently state a claim for failure to intervene because the remainder of their allegations rest on vague and conclusory statements and fail to fulfill the remaining required elements of a failure to intervene claim.

14

Plaintiffs allege only that Defendants Cartwright and Randolph "had the authority, ability, and concurrent duty under 42 U.S.C. § 1983 to prevent the false arrest, wrongful detainment, illegal search, and unlawful prosecution of Plaintiffs, yet neglected to prevent said violations from occurring," and that Cartwright and Randolph "failed to intervene to protect or aid Plaintiffs when such violations did, in fact, occur." AC ¶ 35. Plaintiffs then merely repeat variations of these generalized allegations throughout their Amended Complaint. *See, e.g.*, *id.* ¶ 98 ("Defendants failed to intervene to protect Plaintiffs from the egregious violation of his connotational [sic] rights, despite having a realistic opportunity to do so."); *id.* ¶ 99 ("[A]s a result of Defendants' conduct and failure to intervene, Plaintiffs' Constitutional rights were violated."); *see generally id.* ¶¶ 90–103.

"The Court is 'not bound to accept as true a legal conclusion couched as a factual allegation,' or to credit 'mere conclusory statements' or 'threadbare recitals of the elements of a cause of action.'" *Paredes Guevara v. A&P Restaurant Corp.*, No. 24-CV-0522 (NSR), 2025 WL 3215606, at *2 (S.D.N.Y. Nov. 18, 2025) (quoting *Iqbal*, 556 U.S. at 678) (cleaned up). Yet that is all Plaintiffs provide. As just one example, as Defendants aptly identify, Plaintiffs "fail to specify when and how Cartwright or Randolph could have intervened, as well as which officers they should have prevented from doing what." MTD at 15.

Because Plaintiffs do not plead their failure to intervene claim with the specificity required to nudge it "across the line from conceivable to plausible," it does not survive Defendants' motion to dismiss. *Twombly*, 550 U.S. at 570.

## V.  Plaintiffs Sufficiently Allege *Monell* Liability Based on MVPD's Alleged Failure to Train and Custom of False Arrests

Finally, Plaintiffs allege that the City of Mount Vernon ("City") is liable for these constitutional violations under *Monell*. AC ¶¶ 104–31. In *Monell v. Dep't of Soc. Servs.*, the

15

Supreme Court held that municipal governments, like the City, can be sued directly for damages or injunctive relief for actions that "implement[] or execute[] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or pursuant to a "governmental 'custom'"—even if that custom had not been formally approved by "official decisionmaking channels." 436 U.S. 658, 690–91 (1978). Accordingly, to "bring a viable claim under Section 1983 against a municipality, a plaintiff must . . . allege facts showing that the municipality acted pursuant to a custom, policy, or practice and that such custom, practice or policy caused the claimed rights violation." *Winbush v. N.Y.C. Dep't of Educ.*, No. 23-CV-01320 (LTS), 2025 WL 2624350, at *6 (S.D.N.Y. Sept. 10, 2025) (citing *Monell*, 436 U.S. at 690–91). That means that a plaintiff must establish the following three "elements of a *Monell* claim": "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020).

> To satisfy the 'policy or custom' requirement, a plaintiff may prove the existence of:
>
> > (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986); (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690–91; or (4) a failure to properly train or supervise municipal employees that amounts to 'deliberate indifference to the rights of persons with whom [municipal employees] come into contact,' *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)[.]

*Acevedo v. City of New York*, No. 24-CV-558 (GHW), 2025 WL 2771622, at *4 (S.D.N.Y. Sept. 29, 2025).

Plaintiffs make three allegations that fall into the latter two categories. First, Plaintiffs allege that the City failed to train and supervise its employees (namely, its police officers), which

16

ultimately "led to the Constitutional rights of citizens being violated, including Plaintiffs." AC ¶ 109; *id.* at ¶¶ 105–117. Second, Plaintiffs argue that the MVPD's persistent and widespread practice "of illegal arrests or threats of arrest without probable cause" itself "constituted a custom, policy, and practice" for which the City is liable. *Id.* ¶ 126. Third, Plaintiffs contend that the City maintained a "custom, policy, and practice" of "automatic indemnification," through which it "tolerate[d], condone[d], and encourage[d] Constitutional violations, such as those alleged by Plaintiffs[,]" by "failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by its employees[.]" *Id.* ¶¶ 118, 122; *see also* Opp. at 10 ("The Complaint identifies that Defendant City failed to train and retrain, hired and retained incompetent officers, failed to establish and implement meaningful procedure[s] to discipline or re-train officers who have engaged in misconduct, and failed to implement adequate disciplinary policies to deter any misconduct.").

In support of these allegations, Plaintiffs rely heavily on a report (the "Report") released by the Department of Justice ("DOJ") on December 12, 2024, which found that the Mount Vernon Police Department engaged in "a pattern and practice of unlawful conduct" that included "mak[ing] arrests without probable cause." *Justice Department Finds Civil Rights Violations by the Mount Vernon, New York, Police Department*, U.S. DEP'T OF JUST. ARCHIVES (Dec. 12, 2024), https://www.justice.gov/archives/opa/pr/justice-department-finds-civil-rights-violations-mount-vernon-new-york-police-department. The Report was based on a years-long investigation conducted by the Civil Rights Division's Special Litigation Section and the U.S. Attorney's Office for the Southern District of New York. *Id.*; AC at 8–11. Because the Justice Department has since "retracted" the Report, however, Defendants argue that Plaintiffs' allegations relying on the Report are "no longer valid." MTD at 16; *see The U.S. Department of Justice's Civil Rights*

*Division Dismisses Biden-Era Police Investigations and Proposed Police Consent Decrees in Louisville and Minneapolis*, U.S. Dep't of Just. Off. of Pub. Aff. (May 21, 2025), https://www.justice.gov/opa/pr/us-department-justices-civil-rights-division-dismisses-biden-era-police-investigations-and ("retracting the Biden administration's findings of constitutional violations on the part of" the MVPD).

As an initial matter, the Court addresses Defendants' position that the Report is "no longer valid." Then, it addresses each of Plaintiffs' *Monell* arguments in turn.

### A. The Court Can Consider the Facts Alleged in the Report

Defendants' contention that the Report is "no longer valid" is inaccurate. MTD at 16. And their reliance on an out-of-Circuit case is inapposite. *See* Reply at 8–9 (citing *Kiner v. City of Memphis,* 2025 U.S. Dist. LEXIS 105115 (W.D. Tenn. June 3, 2025)). Instead, the Court turns to a very recent decision by another judge in this District, which assessed an identical argument about another since-retracted DOJ report concerning the very same police department at issue in this case. *See Anderson v. City of Mount Vernon*, No. 23-CV-3963 (NSR), 2025 WL 2773144 (S.D.N.Y. Sept. 29, 2025).

In *Anderson v. City of Mount Vernon*, Plaintiffs similarly "rel[ied] heavily on [a] Department of Justice[] investigative report" to bring a *Monell* claim against the City based on alleged constitutional violations perpetrated by the MVPD. 2025 WL 2773144, at *6. The court in *Anderson* recognized that "the DOJ's subsequent retraction of the report complicate[d] the weight that can be given to [the report's] conclusions" at the motion to dismiss stage. *Id.* Yet it stressed a distinction between the report's legal conclusions—which "alleged a pattern or practice of unconstitutional conduct . . . rooted in systemic deficiencies in MVPD's policies, training, and accountability"—and the factual evidence underpinning those conclusions. *Id.*, at

18

*7. And it emphasized that such evidence remained relevant even after the DOJ had withdrawn its legal conclusions. *Id. Anderson*'s analysis is worth reproducing in full:

> Whether the DOJ's legal conclusions retain weight following retraction is uncertain, and the Second Circuit has not addressed whether such withdrawn findings offer support in the *Monell* claims context. However, it must be acknowledged that courts in this Circuit have recognized that agency findings—while not dispositive—may be "highly probative" when corroborated by other evidence. *See United States v. City of New York*, 717 F.3d 72, 85–86 (2d Cir. 2013) (acknowledging that while agency findings are not binding they are relevant and persuasive when backed by sufficient factual support); *See People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 296–97 (S.D.N.Y. 2000) (noting that while DOJ findings were not controlling, such findings were analyzed at length, noting their probative value in showing patterns and potential constitutional violations); *See Floyd v. City of New York*, 959 F. Supp. 2d 540, 571–72 (S.D.N.Y. 2013) (considering a DOJ report and other agency studies, acknowledging them as relevant context; implying such reports can inform judicial findings, especially when aligned with testimony or statistics).
>
> The Court emphasizes that the factual evidence referenced in the DOJ's report—including officer interviews and internal admissions—may still prove relevant, even if the agency has withdrawn its legal conclusions. *See Marisol A. v. Giuliani*, 929 F. Supp. 662, 685 (S.D.N.Y. 1996) (holding that agency reports can help establish patterns, especially when supported by independent date or testimony; referencing DOJ and other governmental reports as supporting evidence of systemic failure in NYC's child welfare system); *See United States v. Puerto Rico*, 764 F. Supp. 2d 249, 257 (D.P.R. 2011) (noting that despite the political challenges of DOJ findings the court still treated earlier findings as probative in evaluating long standing constitutional deficiencies in the police department).

*Id.* at *7.

The Court adopts the same reasoning here. The effect of the Report's legal conclusions remains uncertain—but the underlying facts alleged, which led to those conclusions, remain relevant to the Court's analysis. *See id.* Indeed, the Justice Department only ever "retract[ed]" the previous administration's "findings of constitutional violations," not the factual evidence

underpinning them. *The U.S. Department of Justice's Civil Rights Division Dismisses Biden-Era Police Investigations*, https://www.justice.gov/opa/pr/us-department-justices-civil-rights-division-dismisses-biden-era-police-investigations-and. Therefore, the Court will consider those facts alleged in the Report as incorporated into the Amended Complaint.

### B. Plaintiffs Adequately Plead Failure to Train

The Court next discusses Plaintiff's claim that the City failed to train or supervise its MVPD officers to such an extent that it caused Plaintiffs' constitutional rights to be violated. AC at 17–19. As outlined above, to establish *Monell* liability for failure to train or supervise, a plaintiff must demonstrate that the municipality's failure "amount[ed] to 'deliberate indifference to the rights of persons with whom [municipal employees] come into contact[.]'" *Acevedo*, 2025 WL 2771622, at *4 (quoting *City of Canton*, 489 U.S. at 388).

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted). The Second Circuit has held that "deliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). Accordingly, to establish deliberate indifference, a plaintiff must submit "evidence that defendants knew to a moral certainty that the City would confront a given situation; the situation presented the City with a difficult choice or there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiffs' rights." *Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 298–99 (E.D.N.Y. 2022) (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).

"In addition to pleading deliberate indifference," a plaintiff must also "plead facts specifying the failures to train or supervise." *Acevedo*, 2025 WL 2771622, at *6. A plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004)) (internal quotation marks omitted). Ultimately, "'conclusory allegations that a municipality failed to train and supervise its employees' are insufficient to state a *Monell* claim absent supporting factual allegations." *Brown v. Town of Clarkstown*, No. 24-CV-04761 (NSR), 2025 WL 1939293, at *6 (S.D.N.Y. July 15, 2025) (quoting *Davis v. City of New York*, No. 07-CV-1395 (RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008)).

At the same time, courts recognize that "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." *Amnesty Am.*, 361 F.3d at 130 n.10. So while "a plaintiff cannot establish a *Monell* claim 'simply by alleging his own experiences,'" *Smith-Daye v. City of Poughkeepsie*, No. 24-CV-03555 (PMH), 2025 WL 2371300, at *3 (S.D.N.Y. Aug. 14, 2025) (quoting *Rutherford v. Westchester Cnty.*, No. 18-CV-04872 (KMK), 2020 WL 433841, at *12 (S.D.N.Y. Jan. 28, 2020)), plaintiffs and courts both commonly rely on outside reports—such as those produced by the DOJ—to plead and, in turn, evaluate *Monell* liability at the motion to dismiss stage. *See, e.g.*, *Greene v. City of New York*, 725 F. Supp. 3d 400, 430 (S.D.N.Y. 2024) (quoting *Breton v. City of New York*, 404 F. Supp. 3d 799, 817 (S.D.N.Y. 2019) (cleaned up) (explaining that research reports "support a plaintiff's *Monell* claims if those reports are sufficiently connected to the specific facts of the case and are of relatively recent vintage")); *Bektic-Marrero*

21

*v. Goldberg*, 850 F. Supp. 2d 418, 431 (S.D.N.Y. 2012) (highlighting that a DOJ report "constitutes a sufficient allegation of a 'custom' of repeated constitutional violations"); *White v. City of New York*, No. 13-CV-7421 (KPF), 2015 WL 4601121, at *6–7 (S.D.N.Y. July 31, 2015) (relying heavily on DOJ investigations to deny a city's motion to dismiss *Monell* claims) (collecting cases); *Shepherd v. Powers*, No. 11-CV-6860 (LTS), 2012 WL 4477241, at *10 (S.D.N.Y. Sept. 27, 2012) ("tak[ing] as true for purposes of this motion practice [at the motion to dismiss stage] the assertion that the deficiencies found by the DOJ existed at the time of the alleged assault against Plaintiff"). *Cf. Anderson v. City of Mount Vernon*, No. 23-CV-3963 (NSR), 2024 WL 2158390, at *8 (S.D.N.Y. May 13, 2024) (finding no *Monell* liability where Plaintiffs relied on "the mere existence of the investigation" and did "not include in the Complaint the results of the DOJ's investigation" or cite to "any findings of liability by the DOJ").

Here, Plaintiffs meet the "stringent" standard required to establish *Monell* liability for failure to train. *Connick*, 563 U.S. at 61; *see supra* I. Construing Plaintiffs' Amended Complaint "liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the [P]laintiff[s'] favor," *Goldstein*, 516 F.3d at 56, Plaintiffs "allege facts tending to support, at least circumstantially, an inference that" specific deficiencies in the City's MVPD training program amounted to deliberate indifference and caused Plaintiffs' alleged false arrest. *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) (quoting *Santos v. New York City,* 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)); *see supra* I.

Plaintiffs' Amended Complaint incorporates specific examples from the Report that detail, for instance, how MVPD officers "detain people and transport them to the police station

for questioning or a strip search" even though "MVPD did not have any operational procedures explaining what constitut[es] an arrest, the need for probable cause, and the criteria for a valid determination of such probable cause." AC ¶¶ 59, 60. "Similarly," the AC alleges, citing the Report, "MVPD's operational procedures fail to provide any guidance on when a stop of a vehicle occupant or a pedestrian becomes an arrest. Nor . . . does MVPD's training fill these gaps." *Id.* ¶ 61. And, the AC maintains, again citing the Report, "MVPD's lack of post-academy training on the law regarding the appropriate basis for vehicle stops, the permissible investigative steps in connection with a stop, or the point at which a stop becomes an arrest . . . significantly contribute to" police interactions like those that form the foundation of Plaintiffs' case. *Id.* ¶ 65.

Although Plaintiffs depend entirely on the DOJ Report to argue that the City "made a conscious choice" to forgo proper training and supervision, *Jones*, 691 F.3d at 81, "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." *Amnesty Am.*, 361 F.3d at 130 n.10. Instead, what is clear at this stage is that Plaintiffs' allegations are "distressingly reminiscent of the problems identified in the Report." *Bektic-Marrero*, 850 F. Supp. 2d at 431. The Report "documented extensive constitutional deficiencies," *Shepherd*, 2012 WL 4477241, at *10, which allow the Court to draw the reasonable inference that Defendants "knew to a moral certainty that the City would confront a given situation [a traffic stop]; the situation presented the City with a difficult choice [and] there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiffs' rights," *Rodriguez*, 607 F. Supp. 3d at 298–99 (quoting *Reynolds*, 506 F.3d at 192).

Indeed, this case reflects the very circumstances the Supreme Court described when it set forth the "deliberate indifference" standard in *City of Canton*, 489 U.S. 378 (1989). There, the

23

Court first "theorized . . . that failing to provide an armed police officer with any training about the constitutional limitations on the use of deadly force could constitute deliberate indifference," *Moses v. Westchester Cnty. Dep't of Corr.*, No. 10-CV-9468 (ER), 2017 WL 4386362, at \*15 (S.D.N.Y. Sept. 29, 2017) (citing *City of Canton*, 489 U.S. at 390 n.10), *aff'd*, 739 F. App'x 66 (2d Cir. 2018), because "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," *City of Canton*, 489 U.S. at 390 n.10. The same is true here, where City policymakers knew to a moral certainty that MVPD officers would be required to make vehicular traffic stops and arrests, yet—as Plaintiffs allege via the Report—still failed to provide MVPD officers with training on such critical topics as "the law regarding the appropriate basis for vehicle stops, the permissible investigative steps in connection with a stop, or the point at which a stop becomes an arrest." AC ¶ 65; *see also* Report at 28 ("[T]he only training MVPD officers consistently receive are trainings in firearms and use of force.")

Second, the Court hypothesized that "[i]t could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." *City of Canton*, 489 U.S. at 390 n.10. Here, too, Plaintiffs' allegations and the Report describe an analogous situation: "the DOJ found that MVPD officers regularly engaged in a pattern or practice of unconstitutional arrests in violation of the Fourth Amendment" and "found that MVPD's vehicle stops raised serious concerns about MVPD's officers['] conduct and the propriety of vehicle stops." AC ¶¶ 58, 64. The practices these allegations portray "must have been plainly obvious to the city policymakers" who nevertheless remained "'deliberately indifferent' to the need" for additional training. *City of Canton*, 489 U.S. at 390 n.10.

24

These allegations stand in stark contrast to distinguishable scenarios "that would not support municipal liability, such as the negligent administration of a valid program, or one or more officers' negligent or intentional disregard of their training." *Amnesty Am.*, 361 F.3d at 130; *cf. Clarke v. Antonini*, No. 21-CV-1877 (NSR), 2024 WL 1347578, at *10 (S.D.N.Y. Mar. 29, 2024) (citing *Amnesty Am.*, 361 F.3d at 130) ("None of the allegations in Plaintiff's SAC establish that the failure to train itself caused Plaintiff's false arrest, instead of some other cause that could not be attributed to the City."). Instead, Plaintiffs "identify specific deficiencies in the City's training program," *Wray v. City of New York*, 490 F.3d at 196 (cleaned up), and create a reasonable inference that the City's failure to remedy those deficiencies "amounted to 'deliberate indifference to the rights of persons with whom [MVPD officers] come into contact.'" *Acevedo*, 2025 WL 2771622, at *4 (quoting *City of Canton*, 489 U.S. at 388) (cleaned up).

Lastly, Plaintiffs "establish a causal link between the municipality's [failure to train] and the[ir] alleged constitutional injury." *Tieman*, 2015 WL 1379652, at *13 (internal citation omitted); *see Agosto*, 982 F.3d at 97. "Per the DOJ's findings, MVPD's officers' violative conduct is directly attributable to MVPD's inadequate policies and training which do not provide adequate guidance to officers," Plaintiffs assert. AC ¶ 57. "The DOJ directly attributed MVPD's officers' pattern or practice of unconstitutional arrests to MVPD's failure to have adequate policies, training and supervision," Plaintiffs continue. *Id.* ¶ 60. Accordingly, although the "word 'causation' does not appear in Plaintiffs' opposition brief," Reply at 9, Plaintiffs "plausibly allege that the 'customs' identified in the Report were the 'cause' of [their] constitutional injuries" at this stage of the pleadings, *Bektic-Marrero*, 850 F. Supp. 2d at 431.

Plaintiffs' failure to train theory withstands Defendants' motion to dismiss.

25

### C. Plaintiffs Adequately Plead MVPD's 'Custom' of False Arrests

Next, in one sentence in their Amended Complaint, Plaintiffs maintain that the MVPD's "pattern and practice" of false arrests is itself "a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policymakers," establishing its own basis for *Monell* liability. *Acevedo*, 2025 WL 2771622, at *4 (citing *Monell*, 436 U.S. at 690–91); *see* AC ¶ 126; Report at 18. "As authorized representatives of" the City, Plaintiffs argue, MVPD officers' "conduct of illegal arrests or threats of arrest without probable or reasonable cause . . . constituted a custom, policy, and practice which renders [the City] liable to Plaintiffs[.]"[3] AC ¶ 126. This theory also survives as a basis for *Monell* liability against the City.

Taking Plaintiffs' allegations as true and drawing all inferences in their favor, the Court finds that MVPD's pattern or practice of making unconstitutional arrests is "persistent and widespread" enough to serve as a basis for *Monell* liability. *Acevedo*, 2025 WL 2771622, at *4. In the Second Circuit, "there is no bright-line rule for the number of instances a Plaintiff must prove to show that a practice is widespread." *Colson v. Mingo*, No. 18-CV-2765 (JGLC), 2025 WL 218520, at *16 (S.D.N.Y. Jan. 16, 2025). Two or three instances perpetuated by "a small number of officers" "over a period of several years" is insufficient to establish *Monell* liability. *Jones*, 691 F.3d at 85; *see also Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (holding that four instances of a practice over an unspecified time period "fall[] far short" of showing a widespread custom). Similarly, a court in this District has found that "[h]alf a dozen dissimilar incidents spread over the past five years fail, as a matter of law," to establish

---

[3] Plaintiffs make the same argument for illegal searches and seizures, as well as malicious prosecution. AC ¶ 126. However, in this case, only Plaintiffs' false arrest claim remains a plausible basis for the City's *Monell* liability. *See supra* I, II, III.

26

municipal liability. *White v. City of New York*, 206 F. Supp. 3d 920, 938 (S.D.N.Y. 2016). Statistical proof of a pattern of questionably constitutional acts, however, may be enough for a *Monell* practice claim to survive even summary judgment. *See Floyd v. City of New York*, 813 F. Supp. 2d 417, 446 (S.D.N.Y. 2011), *on reconsideration*, 813 F. Supp. 2d 457 (S.D.N.Y. 2011) (finding issue of disputed fact for *Monell* claim for unconstitutional stop-and-frisk practices where plaintiff provided statistics showing "the questionable constitutionality" of thirty percent of stops).

In this case, Plaintiffs allege far more than a handful of constitutional violations perpetuated by "a small number of officers" over an extended period of time. *Jones*, 691 F.3d at 85. Instead, Plaintiffs incorporate the DOJ's findings that "MVPD officers regularly engaged in a pattern or practice of unconstitutional arrests in violation of the Fourth Amendment." AC ¶ 58. The DOJ "found that MVPD officers frequently make arrests that lack probable cause." Report at 19; *see also id.* (discussing "MVPD's pattern of unconstitutional arrests"). And, while Plaintiffs do not expressly set out statistical proof that MVPD officers regularly engaged in a pattern of unconstitutional behavior, Plaintiffs do relay that DOJ found "significant evidence that MVPD made arrests that lacked probable cause." AC ¶ 58. With DOJ reporting that "MVPD arrested about 8,000 people across approximately 14,500 arrests from 2015 to 2022," Report at 14, these qualitative descriptions—"regularly engaged," "pattern or practice," "frequently," "significant evidence"—are evidence enough at this stage to demonstrate a "persistent and widespread" practice sufficient to establish *Monell* liability. *Acevedo*, 2025 WL 2771622, at *4; *see Amnesty Am.*, 361 F.3d at 130 n.10 (as above, explaining that it "is unlikely that a plaintiff would have information . . . about the cause of the misconduct at the pleading stage"). Furthermore, drawing

all inferences in Plaintiffs' favor, these allegations of widespread unconstitutional conduct "impl[y] the constructive knowledge of policymakers." *Acevedo*, 2025 WL 2771622, at *4.

Accordingly, Plaintiffs' reliance on the Report is again sufficient to withstand Defendants' motion to dismiss. Plaintiffs' *Monell* liability claim based on the MVPD's "custom" of making false arrests survives.

### D. Plaintiffs Do Not Adequately Allege "Automatic Indemnification"

Finally, the Court addresses Plaintiffs' argument that the City maintained a "custom, policy, and practice" of "automatic indemnification," AC ¶¶ 118, 122, by failing to "discipline or re-train officers who ha[d] engaged in misconduct" as well as by failing "to implement adequate disciplinary policies to deter any misconduct" in the first place, Opp. at 10; *see also* AC ¶¶ 118–31.

A "'persistent failure to discipline subordinates who violate civil rights' . . . can 'give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*.'" *Acevedo*, 2025 WL 2771622, at *6 (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 298 (2d Cir. 2020)). "Such inaction rises to the level of a municipal policy where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates['] unlawful actions." *Id.* (quoting *Boddie v. City of New York*, No. 15-CV-4275 (GHW), 2016 WL 1466555, at *3 (S.D.N.Y. Apr. 13, 2016)).

Again, Plaintiffs rely on the Report to support their argument. But their Report references are extremely limited. Plaintiffs only point out that "[p]er the DOJ, deficiencies in policies, training, supervision and *accountability* systems contribute to MVPD's unlawful practices." AC ¶ 51 (emphasis added). And they highlight that the "DOJ additionally found that MVPD

28

conducts minimal substantive review of the justification for particular arrests and does not collect and analyze sufficient data to identify problematic patterns in these activities." *Id.* ¶ 63. That is all. (A third allegation—that "MVPD fails to use effective measures to review arrests to identify and correct constitutional violation[s]"—does not actually cite to the Report. AC ¶ 62.) Unlike the robust findings that Plaintiffs incorporate into their other *Monell* arguments, these generalized gestures towards "deficiencies . . . in accountability systems" and "minimal substantive review" do not justify Plaintiffs' broad "automatic indemnification" argument. *Id.* ¶¶ 51, 63, 122–23. Nor do they "allow[] the [C]ourt to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Indeed, throughout their Amended Complaint, Plaintiffs' automatic indemnification claim "consists of little more than vague, conclusory allegations that the [City] permitted, tolerated, and covered up police abuses, while failing to discipline and supervise offending police officers." *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012). Simply claiming that "the City failed to adequately discipline and supervise" MVPD officers, however, "is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused Plaintiff[s] to be arrested without probable cause." *Id.* (quoting *Bradley v. City of New York,* No. 08-CV-1106 (NGG), 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009)) (cleaned up); *see, e.g.,* AC ¶ 118 ("It was the custom, policy, and practice of Defendant CITY to tolerate, condone, and encourage Constitutional violations, such as those alleged by Plaintiffs above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by its employees and members."). These "boilerplate statements" are "insufficient to state a claim of municipal liability under *Monell*." *Triano*, 895 F. Supp. 2d at 535 (quoting *Duncan v. City of New York,* No. 11-CV-3826 (CBA), 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012)).

29

Therefore, because Plaintiffs have "not plausibly alleged any facts to support an inference that the [City] has a custom of tolerating or covering up police abuses," their "automatic indemnification" theory for establishing *Monell* liability does not survive Defendants' motion to dismiss. *Id.* at 538.

**VI.     The Court Grants Plaintiffs Leave to Amend Their Malicious Prosecution and Failure to Intervene Claims, Not Their Unlawful Search Claim**

Lastly, Defendants argue that the Court should dismiss all of Plaintiffs' claims with prejudice. MTD 22–23; Reply at 9. The Court largely denies Defendants' request: Plaintiffs are granted leave to amend their malicious prosecution and failure to intervene claims. Their unlawful search claim, however, is dismissed with prejudice.

Federal Rule of Civil Procedure 15(a) provides that if a party has already "amend[ed] its pleading once as a matter of course," as Plaintiffs have here, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). A court should "freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (cleaned up). A proposed amendment is futile if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). The Second Circuit interprets Rule 15 of the Federal Rules of Civil Procedure liberally "consistent with [its] strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks and citation omitted).

Applying these liberal standards, the Court finds that Plaintiffs may be able to allege additional facts that are sufficient to state a claim for malicious prosecution and failure to

30

intervene. In each of those circumstances, better pleading would cure the deficiencies the Court identified in granting Defendants' motion to dismiss. With regard to Plaintiffs' unlawful search claim, by contrast, the "problems . . . are substantive and better pleading will not cure them." *Adeghe v. Procter & Gamble Co.*, No. 22-CV-10025 (CS), 2024 WL 22061, at *8 (S.D.N.Y. Jan. 2, 2024) (cleaned up). Plaintiffs did not even address their unlawful search argument in their Opposition, giving the Court no basis to believe that there are additional facts to allege. Amendment would therefore be futile. *Id.* The Court thus dismisses Plaintiffs' unlawful search claim with prejudice.

## CONCLUSION

For the above stated reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' false arrest claim survives. *See supra* I. So, too, does Plaintiffs' claim for *Monell* liability, based on their alleged failure to train and custom of false arrest arguments. *See supra* V. Plaintiffs lack a basis for *Monell* liability premised on "automatic indemnification." *Id.* Plaintiffs' claims for malicious prosecution and failure to intervene are dismissed without prejudice. *See supra* III, IV. Plaintiffs' claim for unlawful search and seizure is dismissed with prejudice. *See supra* II.

Plaintiffs are granted leave until **April 3, 2026**, to amend their claims for malicious prosecution and failure to intervene in accordance with this Order. After that date, if the complaint is not amended to address these deficiencies, the Court will deem those claims abandoned and will dismiss them with prejudice. The parties are also directed to file a joint letter and Case Management Proposal and Scheduling Order by **April 8, 2026**, in accordance with the Court's Notice of Initial Pretrial Conference at ECF No. 10.

It is further ORDERED that all parties appear for an initial pretrial conference with the Court on **April 15, 2026, at 10:00 a.m.** The conference will be held remotely via Microsoft Teams. Counsel will receive Microsoft Teams log-in credentials at the email addresses listed on the docket. The public listen-only line may be accessed by dialing: 646-453-4442 | Access Code: 765808344#.

The Clerk of Court is respectfully directed to terminate ECF Nos. 7 and 14.

Dated:  March 6, 2026
        New York, New York

                                        SO ORDERED.

                                        Jessica Clarke

                                        JESSICA G. L. CLARKE
                                        United States District Judge

32